**CASE NO. 24-3054**

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

ESTATE OF JAY ANDERSON, JR., et al.,

       Plaintiffs-Appellants,          Case No. 21-CV-1179
                                       (Consolidated with 21-CV-848)

v.

JOSEPH MENSAH, et al.,

       Defendants-Appellees

On Appeal from the United States District Court
For The Eastern District of Wisconsin
Case No: 21-CV-1179
The Honorable Lynn Adelman

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

**CADE LAW GROUP LLC**
Nathaniel Cade, Jr.*
Annalisa Pusick
P.O. Box 170887
Milwaukee, WI 53217
Phone: (414) 255-3802
Fax: (414) 255-3804
nate@cade-law.com
annalisa@cade-law.com

**MOTLEY LEGAL SERVICES**
Kimberley Cy. Motley
P.O. Box 1433
Matthews, NC 28106
Phone: (704) 763-5413
kmotley@motleylegal.com

Attorneys for Appellant
*\* Lead Counsel of Record*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES.......................................................................................................... iii

ARGUMENT............................................................................................................................... 5

    I.   THE DISTRICT COURT ERRED IN MAKING CREDIBILITY DETERMINATIONS AND FAILED TO DRAW ALL REASONABLE FACTUAL INFERENCES IN FAVOR OF APPELLANTS, AS REQUIRED.................................................................................................. 5

        A.   The district court erred in concluding that whether Jay Anderson was reaching for a gun was not a disputed issue of material fact. ........... 6

        B.   The district court erred in concluding that Jay Anderson was not following Mensah's commands, which is a disputed issue of material fact........................................................................................................ 8

        C.   The district court erred in believing Mensah's incorrect "fact" that Jay Anderson had a loaded gun............................................................... 10

        D.   The district court ignored the fact that Mensah was required to turn on his video when interacting with Anderson but purposefully waited to turn on his recording over 10 seconds after killing Anderson. ......................................................................................... 12

   II.  MENSAH IS NOT ENTITLED TO QUALIFIED IMMUNITY. ......................... 14

  III. DEFENDANTS-APPELLEES DID NOT TIMELY FILE THEIR ANSWER TO THE AMENDED COMPLAINT AND THE ALLEGATIONS SHOULD BE DEEMED ADMITTED FOR THE PURPOSES OF SUMMARY JUDGMENT......................................................... 17

        A.   This is not excusable neglect as Appellees never provided an explanation through declaration as to why they never answered the amended complaint. .................................................................................. 18

        B.   Appellees did not move to dismiss the excessive force claims against Mensah and Wauwatosa in its motion to dismiss. ................................. 20

        C.   The district court erred in finding excusable neglect because Appellees filed for summary judgment representing that all pleadings were complete. ........................................................................ 21

CONCLUSION ......................................................................................................................... 23

CERTIFICATE OF COMPLIANCE .........................................................................……..24

CERTIFICATE OF SERVICE ................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Abdullahi v. City of Madison,*
    423 F.3d 763 (7th Cir. 2005) ................................................................ 13
*Agnew v. Cater,*
    No. 3:18-CV-50035, 2022 WL 540763 (N.D. Ill. Feb. 23, 2022) ............................ 16
*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................ 12
*Becker v. Elfreich,*
    821 F.3d 920 (7th Cir. 2016) ............................................................ 15
*Bowman v. Korte,*
    962 F.3d 995 (7th Cir. 2020) ......................................................... 18, 21
*California v. Hodari,*
    499 U.S. 621, 111 S. Ct. 1547, 113 L.Ed.2d 690 (1991) ................................. 15
*Cyrus v. Town of Mukowonago,*
    624 F.3d 856 (7th Cir. 2010) ........................................................... 13
*Ellis v. Wynalda,*
    999 F.2d 243 (7th Cir. 1993) ........................................................... 17
*Ewell v. Toney,*
    853 F.3d 911 (7th Cir. 2017) ........................................................... 15
*Graham v. Connor,*
    490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989) ................................. 15
*Horton v. Pobjecky*
    883 F.3d 941 (7th Cir. 2018) ....................................................... 12, 13
*Lewis v. Sch. Dist. #70,*
    523 F.3d 730 (7th Cir. 2008) ........................................................... 18
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S. Ct. 1348, 89 L. ed. 2d 538 (1986) ................................ 22
*Nestorovic v. Metro. Water Reclamation Dist. of Greater Chi.,*
    926 F.3d 427 (7th Cir. 2019) ........................................................... 19
*Pearson v. Callahan,*
    555 U.S. 223, 231, 129 S. Ct. 808, 172 L.d.2d 565 (2009) ............................... 15
*Plakas v. Drinski,*
    19 F.3d 1143, 1147 (7th Cir. 1994) ..................................................... 13
*Satkar Hosp., Inc. v. Fox Television Holdings ,*
    767 F.3d 701 (7th Cir. 2014) ........................................................... 19
*Scott v. Harris,*
    550 U.S. 372 (2007) .................................................................... 13
*Siler v. City of Kenosha,*
    957 F.3d 751 (7th Cir. 2020) ............................................................ 7
*Strand v. Minchuk,*
    910 F.3d 909 (7th Cir. 2018) ........................................................... 15

*Tennessee v. Garner,*
    471 U.S.1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985) .................................................... 15

*United States v. McLaughlin,*
    470 F.3d 698 (7th Cir. 2006) ................................ 19

*Weinmann v. McClone,*
    787 F.3d 444 (7th Cir. 2015) ................................ 15

**RULES**

Federal Rule of Appellate Procedure 4(a)(5)............................................. 19

Federal Rule of Civil Procedure 6(b)(1)(B) ................................ 18

Federal Rules Civil Procedure 12(a)(4)(A) ................................ 18

**ARGUMENT**

**I.  THE DISTRICT COURT ERRED IN MAKING CREDIBILITY DETERMINATIONS AND FAILED TO DRAW ALL REASONABLE FACTUAL INFERENCES IN FAVOR OF APPELLANTS, AS REQUIRED.**

The district court committed several errors in its summary judgment decision. First, the court improperly made a credibility determination where it determined that Jay Anderson was reaching for the gun he legally possessed on his front seat, as opposed to him potentially reaching for his mobile phone or something else on the front seat. R. 125, at 9. The district court also erred by holding that Anderson allegedly was not complying with Officer Mensah's commands, despite the lack of any audio as to those purported commands, and the only evidence of any such proffered commands coming only from Mensah's testimony. Appellee Response Brief, ("Resp. Br."), at 11. Mensah, in his response, compounds the errors by improperly claiming that the legally possessed gun was "loaded" without any proof that he had such knowledge at the time of the shooting. Resp. Br., at 15, 23. Furthermore, Appellee and the district court contend that the failure to file an answer to the operative complaint to several causes of action should be excusable. Resp. Br., at 41. But, importantly, Plaintiffs-Appellants did not seek a default judgment for the failure to timely file, but rather requested that the unanswered factual assertions be taken as *disputed* pursuant to Circuit case law to defeat summary judgment. Appellants Brief ("App. Br."), at 15. These severe substantive and procedural errors require correction from this Court.

Finally, Plaintiff-Appellants concede that *Monell* liability cannot be maintained and thus concede its dismissal from consideration.

**A. The district court erred in concluding that whether Jay Anderson was reaching for a gun was not a disputed issue of material fact.**

The district court made an improper factual determination in ruling that Jay Anderson was reaching for a legally possessed gun located on the front seat of the vehicle he occupied. The district court found that Mensah "ordered Anderson not to reach for the gun" and that "Mensah could have reasonably believed that Anderson was reaching for his gun." R. 125 at 9; Resp. Br., at 19. This error cannot be squared with the facts of the case (assuming that such facts should have been viewed in the light most favorable to Anderson) as the district court also acknowledged that "Anderson's cellphone was also located on the passenger seat" or that he could have been reaching for "the vehicle registration in the glove compartment." *Id*. And the district court also completely ignored the following testimony from Mensah's deposition:

| Attorney Cade: | So it's fair to say that today you can't definitively state that Mr. Anderson was reaching for a gun as opposed to for his phone, fair? |
|---|---|
| Mensah: | Fair. |

R. 92, ¶ 23-24, R. 90, at 2.

The district court erroneously ignored Appellant's arguments and case law questioning Mensah's credibility. *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir.

2020) ("Summary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations**," particularly where "the one against whom force was used has died, because the witness most likely to contradict the officer's testimony—the victim—cannot testify**.")(emphasis added).

Appellee's argument that "Mensah steadfastly believed that Anderson was reaching for the gun" should be ignored as inconsistent with his prior testimony. Resp. Br., at 22. Notably, Mensah testified in a three-hour deposition that he "could not remember" key details regarding the gun and his interactions with Anderson no less than 120 times. (R. 77-6, at 7:1, 9:14,11:22; 15:7,10, 19,18:19; 21:25, 25:5, 24; 26:7, 18, 21, 24; 27:23; 29:15; 35:25 36:12, 23; 37:6, 9, 12, 21; 38:1, 3, 7, 10, 11, 25; 39:12, 14, 17, 19; 43:16; 44:13, 20, 23, 25; 45:2, 4, 7; 46:1, 6, 8, 11, 19; 47:1; 49:22; 51:2, 5; 53:5, 11, 14; 56:6, 20; 57:2, 7, 11 58:7, 18, 23, 24; 59:1, 6, 24; 61:9, 23; 62:1; 67:1, 6, 11, 13, 23; 68:9, 14, 19, 21, 23; 69:2, 3, 15, 19; 70:10, 18, 25; 71:25; 72:3, 10, 14, 18; 73:8; 74:11,18; 76:9; 80:1, 4, 6, 7, 8, 18, 22; 90:22; 91:13; 94:6; 95:11; 100:4; 101:3; 104:17, 25; 106:4; 108:6; 110:22; 111:7, 23, 24, 25; 112:22; 113:2, 24; 121:9; 122:5, 6; 123:22, 25; 124:2, 11, 21; 125:11; 126:7; 127:15 128:21; 129:3, 14, 16; 130:21; 131:2, 5; 132:9; 137:2; 138:2, 9, 11, 14; 139:15; 153:4, 5; 154:14, 18).

To illustrate further, Mensah testified that he could not remember the orientation of the gun on the passenger seat (R. 77-6, at 44), whether he saw the phone on the passenger seat (R. 77-6, at 45), whether he asked to see the vehicle registration ((that was in the vehicle's glove box) R. 77-6, at 53; R. 90, at 17); whether

he asked for identification from Anderson (that was later found in Anderson's pocket during the autopsy) before or after he saw the gun (R. 77-6, at 53; R. 90, at 4), nor whether he could even remember the weapon itself (R. 77-6, at 44). This remarkable case of convenient amnesia goes to Mensah's credibility and to numerous disputed issues of material facts. And most importantly, Mensah testified that Anderson could have been reaching for his phone, as opposed to the weapon. R. 77-6, at 23-24. The district court improperly drew all inferences in favor of the Appellees, even when there are disputed issues of material fact and clearly Mensah's credibility is at issue. This Court should reverse.

**B.    The district court erred in concluding that Jay Anderson was not following Mensah's commands, which is a disputed issue of material fact.**

Appellees argue without any supporting cites that, "the district court reasoned that even accepting the assumption that in Anderson's refusal to follow Mensah's repeated commands, he was reaching for something other than the handgun, it remained reasonable for Mensah to presume that Anderson was reaching for the gun and that doing so posed an imminent and deadly threat." Resp. Br., at 11. This statement provides two disputed issues of material fact that the district court should have allowed a jury to decide.

First, Appellants disagree with the district court's conclusory determination that "Anderson refus(ed) to follow Mensah's repeated commands." *Id.* In fact, the available squad video clearly shows that Anderson *was* following several of Mensah's commands. *See* Appendix C. Mensah knocked on the passenger window and Anderson

responded and woke up. R. 77-6, at 36:2-16, 37:10-24; *see also* App. C. Mensah then told Anderson to roll down his window, which Anderson did by turning the ignition on and rolling down the passenger side window. *Id*. Anderson to put his hands in the air, complying presumably for several minutes. *See* App. C; R. 77-6, at 36:2-16, 37:10-24, 58:8-59:17. Mensah purportedly asks Anderson for his identification but claims that Anderson stated he did not have any. R. 77-6 at 38:4-25, 39:10-19. Curiously though, Anderson's identification was found in his pocket after he was killed. R. 77-10, at 47: R. 92, ¶10. And, throughout the entire encounter, Anderson never touched the unloaded gun. An objective viewing of the 19 seconds of available footage before Mensah begins shooting shows Anderson undoubtedly complying with commands, communicating with Mensah, and attempting to indicate his movements ahead of time. R. 90, at 3.

The district court also ignored the fact that Mensah, despite department policy, did not turn on his squad camera for at least 10 seconds after killing Anderson. R. 95-8, at 60:1-2. Mensah knew that the available video only goes back 30 seconds to start recording and that waiting 10 seconds ensured that the conversation between him and Anderson would not be captured. Resp. Br., at 5. Only when activated does the recording catch the last 30 seconds without audio. *Id*. Despite this, the district court stated, "Mensah could not have known whether Anderson was reaching for the weapon or for something else." R. 125, at 9. Mensah *could have known* because according to him, he had a conversation with Anderson about it – which he conveniently failed to record. R. 77-6, at 91:17-18. Again, herein lies another disputed issue of material fact

requiring reversal.

### C. The district court erred in believing Mensah's incorrect "fact" that Jay Anderson had a loaded gun.

The district court further erred when it failed to assess Mensah's credibility, as Appellees claim, without any record or evidentiary cites, that he told investigators that he drew his gun because he saw a "loaded semi-automatic handgun within the driver's reach." Resp. Br., at 15. However, when asked about whether Mensah remembered if the gun had an extended magazine, he testified, "I don't know. I don't remember the weapon." R. 77-6, at 44:14-16. In fact, *there is no evidence at all* that the gun was even loaded. R. 77-6, at 44:13.

Appellees make several misrepresentations to this Court regarding Mensah's testimony. First, throughout their brief, Appellees provide record cites to supposed "statements" made by Mensah in his underlying deposition that he did not actually state. One such example is that Appellees claim that Mensah testified that he saw a "semi-automatic handgun, with its magazine inserted, on the front passenger seat. (R. 77-6, pp. 41, 112-113)." Resp. Br., at 4. Mensah never testified to seeing a magazine, bullets, or anything in the gun. R. 77-6, at 44:14-16.

Appellants also repeatedly claim that Anderson had a loaded handgun. Resp. Br., at 10, 15, 23, 24. Mensah never testified that it was loaded. R.77-6, at 44:14-16. Mensah testified to the exact opposite stating, "I don't remember the weapon." R. 77-6, at 44:20. The record does not contain a single piece of evidence to suggest that Anderson's weapon actually was loaded. R. 92, ¶ 13. Subsequent photos were taken of both Mensah and Anderson's weapons and, curiously, Mensah's remaining 10

bullets are counted and displayed (Mensah fired six rounds), while Anderson's weapon does not show a single bullet displayed. R. 79, at ¶¶ 28, 76, 97. Why, for purposes of inventory and investigation, count the bullets from Mensah's weapon, but not Anderson's? Moreover, there is no evidence that Mensah was aware that the gun was loaded at the time he shot Anderson.

 

*Mensah's Glock*                    *Anderson's Ruger*

R. 93, ¶ 100.

The fact that the gun was not loaded, there was not an extended magazine in it, and that Mensah "forgot" these two crucial facts but told the police the exact opposite goes to his credibility. R. 77-6, at 45:9-13. Additionally, Appellee repeatedly states with no record citation that Anderson was reaching for a loaded handgun, which a reasonable and properly instructed jury could determine otherwise. Resp. Br., at 10, 16, 23, and 24. The stark disagreement of whether Anderson was reaching for the gun goes to Mensah's credibility and is a clear dispute of material fact that a jury is in the ultimate position to decide. The stark disagreement of whether the gun

was loaded or not goes to Mensah's credibility and is a clear dispute of material fact that a jury is in the ultimate position to decide. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**D.** **The district court ignored the fact that Mensah was required to turn on his video when interacting with Anderson but purposefully waited to turn on his recording over 10 seconds after killing Anderson.**

The Appellees mislead this Court and state that the "video captur(ed) pertinent portions of the interactions between Officer Mensah and Anderson as information developed during the investigation." Resp. Br., at 3. This is not true. Anderson drove into Madison Park at 3:01 a.m. and six minutes later, he shot and killed Anderson. R. 90, at 31. The Appellants provided this Court with a 5 minute 38 second video from Mensah's squad dashcam, which begins by showing 19 seconds of silent footage of Mensah interacting with Anderson and then Mensah killing Anderson. App. C. The district court improperly interpreted the 19 seconds of silent video in Mensah's favor, concluding that, Anderson was 1) disobeying Mensah's commands to keep his hands visible; 2) he was disobeying Mensah's commands to be still; and that 3) Anderson was lunging for an (unloaded) gun; the court accepted all these facts because Mensah said so. Resp. Br., at 24. Nineteen (19) seconds within the six minutes that Mensah was at Madison Park before killing Anderson is a small sliver of time. Mensah purposefully failed to activate his video and audio to ensure that his entire interaction with Anderson would remain a mystery. R. 91-8, at 60:1-23.

Appellees cite *Horton v. Pobjecky*, claiming that "[w]hen video footage firmly settles a factual issue, there is no genuine dispute about it, and [courts] will not

indulge stories clearly contradicted by the footage" at summary judgment. Resp. Br., at 12; *Horton*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378-81 (2007). However, *Horton* is distinguishable to the present case. In *Horton*, four individuals were trying to commit armed robbery of a convenience store and were captured in less than a one-minute interaction by four cameras and two eyewitnesses. *Id.*, at 945-46. At some point, one of the eyewitnesses, who was an armed off duty officer, struggled with one of the robbers for the gun and ultimately shot and killed one of the robbers. *Id*. While the court in *Horton* had the benefit of viewing the scene unfold in real time and with other eyewitnesses to observe the struggle, Anderson does not have the benefit of four cameras or eyewitnesses to testify as to what occurred in Madison Park. Instead, sadly, we are left with Mensah's version of what unfolded. Indisputably, there is not camera footage to contradict what occurred in Madison Park, nor does the limited camera footage on the record "firmly settle factual disputes." *See Plakas v. Drinski*, 19 F.3d 1143, 1147 (7th Cir. 1994)("The award of summary judgment to the defense in deadly force cases may be made only with particular care where the officer defendant is the only witness left alive to testify…."), *see also Abdullahi v. City of Madison,* 423 F.3d 763, 772 n.7 (7th Cir. 2005) ("'The award of summary judgment to the defense in deadly force cases may be made only with particular care *where the officer defendant is the only witness left alive to testify*.'")(emphasis added)(citations omitted); *Cyrus v. Town of Mukowonago,* 624 F.3d 856, 862 (7th Cir. 2010)(reversing summary judgment where the court "recognized that summary judgment is often inappropriate in excessive force cases

because the evidence surrounding the officer's use of force is often susceptible of different interpretations. This principle is particularly relevant where, as here, the one against whom force was used has died, because the witness most likely to contradict the officer's testimony—the victim—cannot testify.")(citations omitted).

Appellees state that "Mensah's diligence in turning on his squad dashcam captured the incident on video eliminating questions of fact," and make no cites to the record. Resp. Br., at 23. Mensah actions were anything but diligent. He failed to do what he was required to do which was to simply engage his mic to record the audio and video camera *before* he approached Anderson in the car. R. 91-8, at 60:1-23.

Without clear footage capturing the totality of events leading up to the shooting, Appellants do not know what was said, how long Anderson's hands were up, when Mensah first pointed his gun, why he pointed his gun, when did Anderson first follow Mensah's commands and put his hands in the air. We don't know these things because Mensah purposely failed to turn on his squad dashcam video as he was required to do. R. 91-8, at 60:1-23. Instead, the district court ignored this monumental evidentiary hole caused by Mensah and looked at the 19 seconds of silent video "concluding" that Anderson was reaching for a gun because Mensah said so. Resp. Br., at 24. That was improper.

Mensah's actions and inactions leading up to killing Anderson pure and simple is a question for the jury to decide. And the district court erred in granting summary judgment and this Court should reverse.

## II.     MENSAH IS NOT ENTITLED TO QUALIFIED IMMUNITY.

Appellee's arguments that Mensah is entitled to qualified immunity are meritless. Resp. Br., at 24. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.d.2d 565 (2009) (emphasis added).

Once the defense of qualified immunity is raised, a plaintiff "must show (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (explaining that "qualified immunity shields from liability [defendants] who act in ways they reasonably believe to be lawful"); *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016); *Weinmann v. McClone*, 787 F.3d 444, 447 (7th Cir. 2015).

Under the Supreme Court precedent, the first prong of inquiry for this Court is to determine whether Mensah used excessive deadly force, and thus violated Anderson's Fourth Amendment constitutional rights, pursuant to *Tennessee v. Garner*, 471 U.S.1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985), *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989), and their related progeny. *See Strand v. Minchuk*, 910 F.3d 909, 914-15 (7th Cir. 2018). There is little doubt that shooting and killing a citizen is a use of force and subject to the reasonableness requirement of the Fourth Amendment. *California v. Hodari,* 499 U.S. 621, 625-26, 111 S. Ct. 1547, 113 L.Ed.2d 690 (1991); *Tennessee*, 471 U.S. at 9 ("Use of deadly force to prevent

the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable . . . Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

The question here is whether it was clearly established that an officer is not permitted to shoot a person in a parked car who has a legal right to possess the weapon and has not exhibited dangerous behavior. The answer is yes, it was clearly established. *See Agnew v. Cater*, No. 3:18-CV-50035, 2022 WL 540763, at *1 (N.D. Ill. Feb. 23, 2022), where the court specifically noted that such a right was established by at least 2013:

> **"[I]t was clearly established as of 2013** that an officer confronted with a stationary vehicle and a driver who had not exhibited dangerous behavior would not be entitled to use deadly force." *Rand v. Lavoie*, Case No. 14-cv-570, 2017 WL 3891679, at *4 n.3, 2017 U.S. Dist. LEXIS 142755, at *12 n.3 (D.N.H. Sept. 5, 2017) (citing decisions from four different Circuit Courts dating back to 2007) . . . Albeit an out-of-circuit decision, the 2005 opinion in *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005), is instructive. In that case, the Sixth Circuit found that as far back as 2002, it was clearly established that a law enforcement officer could not use deadly force by shooting at a non-violent motorist when pedestrians were not in harm's way of the vehicle, despite the rapidly developing events confronting the officer. *Smith*, 430 F.3d at 775-76. And if a law enforcement officer cannot shoot at a moving vehicle that was not in danger of striking an officer and bystander, then an officer **certainly cannot shoot** a motorist in a stationary vehicle."

2022 WL 540763, at *11 (emphasis added).

Mensah is not entitled to qualified immunity for using excessive deadly force. Anderson was in a stationary vehicle with the ignition on, but only because Mensah had instructed him to roll down the car's passenger window. R. 77-6, at 36:2-16; 37:10-

24. Anderson had a mobile phone on the front seat, which Mensah admits that in his interactions people routinely record with their phones. R. 77-6, at 98: 5-17, 44:21-45:7. Dispatch confirmed that the vehicle was not stolen. R. 92 ¶5. Mensah may have asked for Anderson's car's registration, which was in the glovebox. R. 77-6, at 54:12-14; R. 92, ¶5. And finally, Anderson had an unloaded weapon on the front seat, which while it is publicly displayed and out in the open, Mensah admits he was allowed to possess under Wisconsin state law. R. 92, at 71:4-72:23.

Not only is the right to be free from excessive force a right clearly established at the time Mensah shot Anderson, but the existence of a question of fact over the immediate danger prevents this Court from finding that Mensah is entitled to qualified immunity. *See Ellis v. Wynalda*, 999 F.2d 243, 247 (7th Cir. 1993). Qualified immunity is inappropriate here, and this Court should agree.

## III. DEFENDANTS-APPELLEES DID NOT TIMELY FILE THEIR ANSWER TO THE AMENDED COMPLAINT AND THE ALLEGATIONS SHOULD BE DEEMED ADMITTED FOR THE PURPOSES OF SUMMARY JUDGMENT.

Appellee filed untimely answers to the amended complaint. R.108. Appellees claims that they "immediately filed an expedited motion to expand the time within which to file their answer to the amended complaint along with a proposed answer. (R. 108)." In reality, Appellee motioned the district court to grant their "request to file the accompanying answers to the Amended Complaints in Anderson and Cole" because Anderson utilized his failure during summary judgment, alerting him and his counsel to the mistake. R. 108, at 4, ¶ 18. The district court abused its discretion

by allowing Appellee to file a late answer on the record, after they filed summary judgment materials to the district court. R. 125, at 5.

### A. This is not excusable neglect as Appellees never provided an explanation through declaration as to why they never answered the amended complaint.

A district court has the discretion to permit the defendants to file their answer late "when the failure to act was the result of excusable neglect." *Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008), citing Fed. R. Civ. P. 6(b)(1)(B). Federal Rule of Civil Procedure 6(b)(1)(B) permits a court to extend deadlines—even after the time to act has expired—if there is good cause and the party "failed to act because of excusable neglect." *Bowman v. Korte*, 962 F.3d 995, 997 (7th Cir. 2020). Although the district court's decision to permit a late filing is reviewed for an abuse of discretion, appellate courts independently review the reasons alleged for "excusable neglect." *Id.*, at 998. Therefore, when the reasons for a defendant's late filing do not amount to excusable neglect, it is an abuse of discretion to permit the late filing. *Id*. The district court abused its discretion because Appellees failed to show "excusable neglect."

Anderson filed an Amended Complaint on August 24, 2022. (R. 101, ¶ 4). Mensah moved to dismiss that complaint. *Id*. And when the district court denied the motion to dismiss on April 11, 2023, it rendered Mensah's answer due on April 25, 2023. (R. 54); Federal Rules Civil Procedure 12(a)(4)(A).

Throughout this matter, Appellees have been represented by six attorneys. *See* R. 9-13, 48, 49 (*Estate of Jay Anderson. v. Joseph Mensah, et al,* E.D. Wis. Case No.

21-CV-1179)[1]; (hereinafter "*Anderson*"). Appellees argue that they untimely filed their answers because it "fell during defense counsel's preparation for a five-day civil rights trial." Resp. Br. at 43. However, only two of the attorneys were in trial, leaving four attorneys who also failed to answer the amended complaint.

None of the six attorneys have provided a plausible explanation as to why they failed to answer the amended complaint in a timely manner. Only one of the six attorneys, filed a declaration with the district court, indicating that she was too busy to file an answer because of a five-day jury trial that was scheduled to begin on May 1, 2023. (R. 101, ¶ 8). But May 1 was 5 days after the filing was due. (R. 54); Fed. R. Civ. P. 12(a)(4)(A).

The other five attorneys in this matter never provided an explanation nor declaration as to their similar neglect in failing to answer the amended complaint either. *See Anderson* R. 9, 10, 11, 12, 49, 67. The failure to explain should be fatal, as their explanation does not amount to "excusable neglect" that Rule 6(b)(1)(B) requires. *See Nestorovic v. Metro. Water Reclamation Dist. of Greater Chi.*, 926 F.3d 427, 431–32 (7th Cir. 2019) (dismissing appeal for failure to show excusable neglect or good cause under 28 U.S.C. § 2107(a)); *see also Satkar Hosp., Inc. v. Fox Television Holdings* , 767 F.3d 701, 708 (7th Cir. 2014) (explaining that Federal Rule of Appellate Procedure 4(a)(5) requires "excusable neglect" not just "plain neglect.") *United States v. McLaughlin*, 470 F.3d 698, 700–01 (7th Cir. 2006) ("It "will not

---

[1] As noted, the court consolidated three cases involving three fatal shootings of Joseph Mensah in cases (21-CV-848, 21-CV-1179, 22-CV-856).

suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect inexplicable.")

This is neglect plain and simple, and the district court should not have allowed Appellees' excuse to pass muster.

**B. Appellees did not move to dismiss the excessive force claims against Mensah and Wauwatosa in its motion to dismiss.**

The district court ignored, and the Appellees did not provide an explanation for, why they "did not move to dismiss nor did they provide an answer to Claim 1 for Relief of Excessive Force against Defendants Mensah and the City of Wauwatosa (Paragraphs 146-172) of the Anderson Amended Complaint." R. 90, at 10. The Appellees failed to address their failure to answer the excessive force claims against Mensah and Wauwatosa when it was due on September 23, 2022, eleven months prior to their filing for summary judgment. R. 47, 78, 108, 112. Appellees further argue that they timely moved to dismiss the claims in the amended complaint. Resp. Br., at 41. This is not true. In their Motion to Dismiss the Appellees ***did not*** move to dismiss the excessive force claims against Joseph Mensah and the City of Wauwatosa. R. 51. Appellees clearly were aware of this claim, and argued to dismiss Weber from the excessive force claim and ***not*** Mensah and Wauwatosa. R. 51, at 3-5. Likely because, at the time, Appellees believed it would not get dismissed.

And despite the continued inattention, the district court *sua sponte* deemed that trial preparation in May 2023, eight months *after* their answers were due, somehow negated Appellees' decision to not move to dismiss on the excessive force

claims for Mensah and Wauwatosa and then fail to answer those exact claims. R. 125. This is reversible error.

To date, not one of the six attorneys representing the Appellees throughout this matter have provided excusable neglect as to why they failed to answer the excessive force claims against Mensah and Wauwatosa when they were due nearly a year before filing for summary judgment. R. 47, at ¶¶146-172. Instead, Appellees' primary argument for not answering the amended complaint was because they sought a motion to dismiss. Resp. Br., at 41. However, the motion to dismiss did not include excessive force claims against Mensah and Wauwatosa. Those claims went unaddressed in its entirety.

Despite providing no explanation as to why they failed to dismiss the excessive force claims, the district court *sua sponte* believed that their failure in answering the complaint was also excusable neglect. R. 125, at 5. Appellees never offered an explanation as to their failure to answer the excessive force claims against Mensah and Wauwatosa when it initially was due in September 2022. This intentional action was plain neglect, and the district court abused its direction in allowing Appellees to untimely answer the complaint. This correcting Court should scrutinize severe procedural errors heavily and find that the district court abused its discretion. *See Bowman,* 962 F.3d at 998.

### C. The district court erred in finding excusable neglect because Appellees filed for summary judgment representing that all pleadings were complete.

Appellees moved for summary judgment and in doing so represented that there were no genuine issues of material fact and that the pleadings were complete. R. 78.

Part of the calculation in moving for summary judgment requires that the Appellees look at their pleadings in order to ethically represent to the court that there are no issues of material fact. *Id.* The purpose of summary judgment is to "pierce the pleadings and to access the proof in order to see whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. ed. 2d 538 (1986).[2]

In addition to filing for summary judgment, Appellees in their proposed findings of fact cite to the Appellants amended complaint seven times, including agreeing to seven of Appellant's facts made in the amended complaint. R. 79, at ¶¶1-5, 7, 8. Theoretically, one would think that if an opposing party agrees with and cites to certain facts in the amended complaint, that this would have required the Appellee to look to and compare with their answers to make sure that they also admitted to the same seven facts when answering the complaint. *Id.*

Despite filing their summary judgment motion and relying on their proposed findings of fact that apparently refer to the amended complaint, and only after Appellant filed its response to the summary judgment motion, did a single attorney for Appellee notice that they failed to timely file an answer. R. 78, Resp. Br., at 43. One would think that when Appellees initially filed for summary judgment that, at a bare minimum, they would have *underline*actually*underline* verified that their answer to the amended

---

[2] Ironically, Appellees cited to the same summary judgment rules in moving to dismiss Appellant's current *Monell* Claims for being "untimely" appealed but fail to acknowledge their failure to answer the amended complaint. Resp. Dkt. 18, at 20. This Court should not allow Appellees to have it both ways.

complaint was properly docketed. R. 108. The district court abused its discretion in not deeming all the facts to be admitted as true, and this Court should consider the procedural impracticality of an imperfect record being submitted for summary judgment without recourse.

## CONCLUSION

Plaintiff-Appellant respectfully requests that this Court **REVERSE** the district court's grant of summary judgment in favor of the Defendants-Appellees and **REMAND** this case back to the district court for further proceedings.

Dated this day of 28th day of February 2025.

**CADE LAW GROUP LLC**
By:/s/*Annalisa Pusick.*
Nathaniel Cade, Jr.*
Annalisa Pusick
P.O. Box 170887
Milwaukee, WI 53217
Phone: (414) 255-3802
Fax: (414) 255-3804
nate@cade-law.com
annalisa@cade-law.com

**MOTLEY LEGAL SERVICES**

Kimberley Cy. Motley
P.O. Box 1433
Matthews, NC 28106
Phone: (704) 763-5413
Fax: (704) 559-2450
kmotley@motleylegal.com

Attorneys for Plaintiffs-Appellants
* *Lead Counsel of Record*

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(A)(7),

## FRAP RULE 32(G), AND FRAP RULE 32(C)

The undersigned counsel of record for Plaintiff-Appellant furnishes the following in compliance with F.R.A.P Rule 32(a)(7) and Cir. R. 32(c):

I hereby certify that this brief conforms to the rules contained in Fed. R. App. P. Rule 32(a)(7)(B)(ii) and Circuit Rule 32(c) for a reply brief produced with a proportionally spaced font. The length of this brief is less than 7,000 words (the length is 5,178 words).

Dated this 28th day of February 2025.

**CADE LAW GROUP LLC**

By: */s/Annalisa Pusick*

Nathaniel Cade, Jr.
Annalisa Pusick
P.O. Box 170887
Milwaukee, WI 53217
Phone: (414) 255-3802
Fax: (414) 255-3804
nate@cade-law.com
annalisa@cade-law.com

**MOTLEY LEGAL SERVICES**

Kimberley Cy. Motley
P.O. Box 1433
Matthews, NC 28106
Phone: (704) 763-5413
Fax: (704) 559-2450
kmotley@motleylegal.com

Attorneys for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2025, I electronically filed the foregoing Reply Brief of Plaintiff-Appellant in Support of Appeal with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

Dated this 28th day of February 2025.

**CADE LAW GROUP LLC**

By: */s/Annalisa Pusick*

Nathaniel Cade, Jr.
Annalisa Pusick
P.O. Box 170887
Milwaukee, WI 53217
Phone: (414) 255-3802
Fax: (414) 255-3804
nate@cade-law.com
annalisa@cade-law.com

**MOTLEY LEGAL SERVICES**

Kimberley Cy. Motley
P.O. Box 1433
Matthews, NC 28106
Phone: (704) 763-5413
Fax: (704) 559-2450
kmotley@motleylegal.com

Attorneys for Plaintiffs-Appellants

✓

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on __February 28, 2025__, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/___Annalisa Pusick_____

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                    address:

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

s/_____